# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

ROY W. PATRICK, )
 )
 Plaintiff, )
 )
v. ) Case No. CIV-13-544-SPS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
 )
 Defendant. )

## OPINION AND ORDER

The claimant Roy W. Patrick requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on April 19, 1960, and was fifty-two years old at the time of the most recent administrative hearing (Tr. 28, 249). He has a high school education and past relevant work as a farm equipment operator (Tr. 233, 155). The claimant alleges that he has been unable to work since June 1, 2005 because of bad knees (Tr. 151).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 9, 2008. His applications were denied. ALJ Trace Baldwin conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated June 7, 2010 (Tr. 11-22). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-11-323-SPS, and remanded to the ALJ with instructions to consider the impact of the claimant's obesity on his impairments and whether it had any additional and cumulative effects (Tr. 302-310). On remand, ALJ James Bentley conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated April 9, 2013 (Tr. 222-235). The Appeals Council again denied

review, so ALJ Bentley's written opinion is the final decision of the Commissioner on appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk about six hours in an eight-hour workday, sit six hours in an eight-hour workday, and he could occasionally bend, stoop, kneel, crouch, crawl, and climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. He further found that the claimant must have a sit/stand option, defined as a temporary change in position from sitting to standing and vice versa without leaving the workstation (Tr. 226). The ALJ concluded that although the claimant could not return to any past relevant work, he was nevertheless not disabled because there was work in the regional and national economy that he could perform, *i. e.*, office helper, mail room clerk, and garment sorter (Tr. 234).

### Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinion of his treating physician, Dr. Noel Miller, and (ii) by failing to properly analyze his credibility. The undersigned Magistrate Judge finds the claimant's contentions unpersuasive for the following reasons.

Although the claimant alleged disability beginning in 2005, there is no medical evidence in the record prior to April 2008. The medical evidence reflects that the claimant went to the emergency room with a strained back on August 31, 2008 (Tr. 179). He reported at that time that Dr. Miller had seen him two weeks previously and provided him with a cortisone shot (Tr. 179). An x-ray of the lumbosacral spine was within normal limits, but positive for mild degenerative changes with some anterior lipping (Tr. 179, 183). Dr. Miller's records indicate he saw the claimant throughout 2008 and 2009. His notes indicate that he saw the claimant for medication management and general care, such as sinus infections (Tr. 203-204).

On October 12, 2009, Dr. Miller completed a physical Medical Source Statement (MSS), in which he opined that the claimant could lift/carry ten pounds frequently and occasionally, stand/walk 30 minutes continuously in an eight-hour workday, and sit less than two hours out of an eight-hour workday, and only for thirty minutes at a time (Tr. 205). He further indicated that the claimant would be required to lie down during a normal workday to manage pain (Tr. 206). As for postural limitations, he indicated that the claimant could never climb, balance, stoop, kneel, crouch, or crawl, but he could frequently reach, handle, finger, and feel (Tr. 206). In support of his statement, Dr. Miller indicated that the claimant had problems with ambulation and prolonged sitting, and referred to loss of balance and gait impairment (Tr. 206).

On January 1, 2008, Dr. Ronald Schatzman conducted a consultative examination of the claimant. Upon exam, he noted that the claimant was morbidly obese at 338

pounds, pulses could not be palpated secondary to morbid obesity, he had normal grip strength, effusion of his left index finger PIP joint and approximately 20 degrees of flexion, as well as tenderness of both knees with palpable osteophytes of both knees consistent with degenerative arthritis (Tr. 185-186). He noted that the knees showed no effusion or edema and were stable in all range of motion exercises (Tr. 186). He further noted that the claimant walked with a broad-based gait, typical of the morbidly obese, but that the gait was safe and stable with appropriate speed (Tr. 186). He assessed the claimant with knee pain, probable degenerative arthritis; severe morbid obesity; loss of sense of smell (by the claimant's report); severe personal hygiene problems; hypertension; and effusion of the left index finger (Tr. 186).

State reviewing physician Dr. Kenneth Wainner reviewed the medical evidence available on March 10, 2009, and concluded that the claimant could perform light work, limited to occasional postural limitations (Tr. 194-195).

The claimant testified at the most recent administrative hearing that he could walk a city block slowly and painfully, that he had recently lost 16 pounds due to the shingles, that he cannot squat, and that he has arthritis in his arms (Tr. 257-259). He stated that he did not have a specific diet plan, although Dr. Miller had told him he needed to lose weight (Tr. 260). He stated that he has difficulty getting around and usually just stays home, sitting in his recliner with his legs elevated approximately 7 hours a day (Tr. 261, 274).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave

to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

In this case, the ALJ adequately discussed and analyzed Dr. Miller's opinion. The ALJ found that: (i) Dr. Miller had not seen the claimant in seven months prior to completing the MSS, and only three times in the previous two years; (ii) Dr. Miller's opinions were not supported by any objective evidence; (iii) Dr. Miller was not a specialist; and (iv) Dr. Miller's treatment had been very conservative and sporadic and was not at all supported by his own treatment notes, particularly in relation to his statements regarding the claimant's ambulation and gait impairment, which were in contrast to Dr. Schatzman's observations regarding the claimant's gait (Tr. 229-230). He therefore assigned Dr. Miller's opinion little weight. Based on this analysis, the ALJ did not commit error in failing to include any limitations imposed by Dr. Miller in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant further contends that the ALJ should have recontacted Dr. Miller for clarification. Although the ALJ may not engage in unsubstantiated speculation to reject a treating physician opinion, *see, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or

her own credibility judgments, speculation or lay opinion."), *quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), ALJ Bentley did not reject Dr. Miller's opinion on that basis. If the ALJ had doubts as to any of the evidence, he *could have* re-contacted Dr. Miller to clear it up, *see* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician, psychologist, or other medical source."), but he was under no obligation to do so, as the claimant implies.

The claimant next argues that the ALJ erred by failing to properly assess his credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ summarized the claimant's testimony and determined that his "statements concerning the intensity, persistence, and limiting effects of his symptoms [were] not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" (Tr. 228). The Court has disapproved this language in the past, as it suggests an improper approach to the process, *i. e.*, assignment of an RFC and subsequent measurement of claimant credibility against the RFC, rather than initial evaluation of the claimant's credibility (along with other evidence in the case) and subsequent formulation of an appropriate RFC based thereon. *See, e. g., McFerran v. Astrue,* 2011 WL 3648222, *2-*3 (10th Cir. Aug. 19, 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' . . . The ALJ's errors in the credibility assessment necessarily affect the RFC determination."), [unpublished opinion], *quoting Poppa v. Astrue,* 569 F.3d 1167, 1171 (10th Cir. 2009). But the ALJ in this case the elaborated by discussing the medical evidence on which he relied to find that the claimant was not credible: (i) the claimant's infrequent treatment and routine nature of treatment when he did see his physicians, (ii) the available medical records revealing that the claimant did not report symptoms such as those alleged at his hearing testimony, (iii) his history of substance abuse resulting in the loss of his driver's license that did not reflect well on his credibility, (iv) the infrequency with which he sought treatment other than prescription refills for these allegedly disabling impairments, and (v) his description

of his daily activities in contrast to his assertion that he spent seven hours a day in his recliner (Tr. 226-233). Although the ALJ also stated that the claimant had not taken steps to lose weight despite his physicians' recommendations, he noted that he did not based his findings on the claimant's failure to pursue treatment (Tr. 231). Thus, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and provided specific reasons for the determination in accordance with *Hardman*. His credibility determination was therefore not clearly erroneous. Accordingly, the decision of the Commissioner should be AFFIRMED.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 26th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**